UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X

JULIA W. SHERMAN,

                Plaintiff,                          CV-07-0679 (SJF)(LB)

      -against-

                                                **OPINION & ORDER**

NEW YORK PUBLIC LIBRARY,

                Defendant.
------------------------------------------------X

FEUERSTEIN, J.

On February 8 2007, *pro se* plaintiff Julia W. Sherman ("Plaintiff") commenced this employment discrimination action against defendant New York Public Library ("Defendant") alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"). Defendant now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for partial dismissal of the complaint. For the reasons set forth herein, defendant's motion is granted.

I.      Background[1]

      A.      Factual Background

Plaintiff is a "Black woman from Africa," who is currently sixty-nine (69) years old.

---

[1] As is required on a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint, though disputed by defendant, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiffs. They do not constitute findings of fact by this court.

1

(Complaint [Compl.], ¶ 7). Plaintiff was employed with defendant from July 10, 1995 until August 19, 2005, which, according to plaintiff, was her "official date of retirement after being in the employ of [defendant] for ten years." ("Particulars to Attachment" of Complaint [Compl. Attach.], p. 1). According to plaintiff, she worked at several different branches of defendant, including the St. Agnes Branch, where she worked from July 14, 2004 until the date of her retirement. (Id.).

Plaintiff alleges that some time prior to February 14, 2005, she was reprimanded by Joan Jankell, her supervisor at the St. Agnes Branch, in violation of "Article XXVI– Personnel Data, Section 7," which allegedly provides that "a Staff member shall not be reprimanded except in private." (Compl. Attach., pp. 1-2). Plaintiff alleges that on February 14, 2005, she met with Jankell, Amelia Schwartz, defendant's Supervisor of the West District and Bonnie Birman, to complain about the differential treatment she was receiving. (Compl. Attach. p. 2; see also plaintiff's memorandum entitled "Meeting with Ms. B. Birman, A. Schwartz and J Jankell Monday, February 14, 2005" attached to Compl. [Plf. Mem.] detailing the purported harassment of plaintiff by Jankell). According to plaintiff, following that meeting, Birman informed her that she would not receive an increase in salary notwithstanding that all of the other librarians' salaries were increased. (Compl. Attach., p. 2).

Plaintiff further alleges that on April 12, 2005, she grieved a violation "of the Local 1930/NYPL contract– Article XI 'Leave Regulations' Section 4 by Ms. Bonnie Birman." (Compl., p. 7). Plaintiff alleges that a hearing on that grievance was never scheduled. (Id.). Plaintiff also alleges that she was treated differently insofar as she was denied a promotion and transferred "for no reason." (Id.). According to plaintiff, as a result of the disparate treatment,

she retired at a lower salary than that of a Senior Librarian. (Id.).

Plaintiff alleges that on June 16, 2005, she filed a complaint of discrimination and harassment with Jennifer Z. Lloyd, defendant's Labor Relations Administrator. (Compl., p. 7).

Plaintiff alleges that Jennifer Levesque, the Benefits Administrator for defendant, assisted her in filing for her retirements benefits in or around September 2005 and thereafter. (Compl., "Particulars as Attachment" to Complaint", [Compl. Attach.] p. 1). According to plaintiff, she never received her "Lump Sum" retirement benefit, which plaintiff describes as "a bonus giving [sic] to all Vested employees on retirement." (Id.). In addition, plaintiff alleges that her pension "was affected" because Ms. Levesque "omitt[ed] the names of other employers" of plaintiff in documents she sent to Albany. (Id.). Plaintiff further alleges that although Levesque informed her that her premium for health insurance benefits would be paid by defendant, she was informed by Jill Mongelluzzo that she must contribute to the premium. (Id.).

B. Procedural History

On May 13, 2006, plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) against Birman, Priscilla Southon and the New York Public Library, alleging discrimination based on race, national origin and age and retaliation. (Compl., ¶ 10). Specifically, plaintiff alleged that after she received an MS degree in Library and Information Science from Pratt Institute in 1999, she was treated differently insofar as she was denied promotions, training opportunities and salary increases "until after two years" and her name did not appear in the Staff News. (EEOC Charge). Plaintiff attached to the EEOC charge the same "Particulars as Attachment" that she annexed to the complaint in this case.

3

On February 8 2007, plaintiff commenced this action against defendant under Title VII and the ADEA, alleging that on February 14, 2005 and April 12, 2005 and "so many other dates that are not on my [illegible]," defendant denied her promotions and raises, suspended her without pay for five (5) days, harassed her, violated certain contractual provisions relating to "Leave Regulations" and how to reprimand a staff member and retaliated against her on the basis of her race and national origin. (Compl., ¶¶ 4-5, 8). In addition, plaintiff alleges that she was discriminated against in the processing of her retirement benefits. (Compl., p. 4, ¶ 8)[2]. Plaintiff seeks back pay, a salary increase, the lump sum retirement benefit, and that corrections be made to her retirement documents submitted to Albany, presumably so that her pension can be corrected. (Compl., p. 7).

The EEOC issued a right to sue letter on November 21, 2006.

Defendant now moves for partial dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

II.  Discussion

A.  Standard of Review

In Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court rejected the previous standard that a motion made pursuant to Rule 12(b)(6) of the Federal

---

[2] Plaintiff also appears to assert, in essence, a constructive discharge claim, insofar as she claims in her opposition to defendant's motion to dismiss that she "was forced to retire, after 10 years of professional dedicated service with [defendant]," ("Plaintiff's Response to Defendant's Preliminary Statement" [Plf. Opp.], p. 5 ¶ 8), and a hostile work environment claim. (Id. at p. 5). In addition, plaintiff also alleges that defendant retaliated against her by failing to give her a service review for the year 2004-2005. (Plaintiff's "Summary", p. 2).

4

Rules of Civil Procedure should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." The Court replaced the "no set of facts" language with the requirement that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Id. at 1974. The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). A "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic, 127 S.Ct. at 1959. Accordingly, the applicable standard on a motion to dismiss pursuant to Rule 12(b)(6) requires, at least, allegations "plausibly suggesting (not merely consistent with)," liability. Williams v. Berkshire Financial Group, Inc., 491 F.Supp.2d 320, 324 (E.D.N.Y. 2007).

Bell Atlantic did not, however, change the requirement that the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 237 (2nd Cir. 2007); Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007). Moreover, "an employment discrimination plaintiff need not plead a prima facie case of discrimination. * * * [T]he Federal Rules do not contain a heightened pleading standard for employment discrimination suits." Kassner, 496 F.3d at 237 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514-515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). Thus, the appropriate inquiry on a motion to dismiss in an employment discrimination suit "is not whether a plaintiff is likely to prevail, but

5

whether he is entitled to offer evidence to support his claims." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A *pro se* plaintiff's submissions are held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 [1972]). Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 [2d Cir. 1994]). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir. 1983).

B. Exhaustion

Defendant contends that plaintiff's claims regarding Jankell's alleged harassment should be dismissed because they were not included in her EEOC charge and are not reasonably related to the claims asserted therein.

Exhaustion of administrative remedies and the timely filing of a complaint with the EEOC are preconditions to filing a Title VII or ADEA action in federal court. See, Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003); Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). "Administrative exhaustion is an essential element of Title VII's statutory scheme, the purpose of which is to avoid unnecessary judicial action by the federal courts by giving the administrative agency the opportunity to investigate, mediate, and take remedial action." Canty v. Wackenhut Corrections Corp., 255 F.Supp.2d 113, 116 (E.D.N.Y.

2003)(internal quotations and citation omitted); see also Bey v. Welsbach Elec. Corp., No. 01 Civ. 2667, 2001 WL 863419, at * 2 (S.D.N.Y. Jul. 30, 2001)(accord).

Claims that were not asserted in an EEOC charge may only be pursued in a federal action under Title VII or the ADEA if they are "reasonably related" to those that were filed with the agency. Ximines v. George Wingate High School, 516 F.3d 156, 158 (2d Cir. 2008) (per curiam); Williams v. New York City Housing Authority, 458 F.3d 67, 70 (2d Cir. 2006); Deravin, 335 F.3d at 200. There are three types of "reasonably related" claims: (1) claims that fall "within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) claims that allege retaliation arising from the filing of an EEOC charge; and (3) claims that allege "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Butts v. City of New York Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1402-1403 (2d Cir. 1993), superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care, 163 F.3d 684 (2d Cir. 1998). Only the first type of "reasonably related" claims is relevant here.

In determining whether claims "fall within the scope of the EEOC investigation", the focus should be on the factual allegations contained in the EEOC charge itself. Deravin, 335 F.3d at 201; see also Williams, 458 F.3d at 70 (accord). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" Williams, 458 F.3d at 70 (citing Deravin, 335 F.3d at 202).

Although plaintiff does not specifically name Jankell in the EEOC charge, she annexed to the charge a "Particulars as Attachment," in which she alleged that Jankell reprimanded her in violation of "Article XXVI–Personnel Data, Section 7" and "treated her so differently" that she

7

requested a meeting with Schwartz and Birman to discuss the disparate treatment. Thus, plaintiff's claims against Jankell arguably fall "within the scope of the EEOC investigation which can reasonably be expected to grow out of" plaintiff's charge of discrimination.

C. Timely Filing of EEOC Charge

Defendant contends that plaintiff's claims relating to discrete acts occurring prior to July 22, 2005 are time-barred.

42 U.S.C. § 2000e-5(e)(1) provides, in pertinent part, as follows:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

Similarly, 29 U.S.C. § 626(d) provides, in pertinent part, as follows:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed– (1) within 180 days after the alleged unlawful practice occurred; or (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Thus, to sustain a claim for unlawful discrimination under either Title VII or the ADEA

in New York, which has an agency with the authority to address charges of discriminatory employment practices, a plaintiff must first file an administrative charge of discrimination with the EEOC within three hundred (300) days of the alleged discriminatory acts. See Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S.Ct. 2162, 2167, 167 L.Ed.2d 982 (2007); Mudholkar v. Univ. of Rochester, No. 06-4732-cv, 2008 WL 213888, at * 2 (2d Cir. Jan. 25, 2008) (citing Butts, 990 F.2d at 1401); Flaherty v. Metromail Corp., 235 F.3d 133, 137 n. 1 (2d Cir. 2000).

Initially, the ADEA does not define "charge." Plaintiff's formal charge of discrimination was filed on May 13, 2006. Plaintiff contends, however, that her completion of a "Questionnaire to the Commissioner of US EEOC," together with the documents she submitted in support thereof, on April 16, 2006 constitutes the filing of an administrative charge and, thus, the charging period commenced on June 20, 2006. In her cover letter enclosing the submissions, plaintiff stated "Thank you for looking at my complaint and providing me with the proper guidance necessary." (Letter from Plaintiff to the Commissioner of the U.S. EEOC dated April 16, 2006).

The Supreme Court has recently held that "if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Federal Express Corp. v. Holowecki, 128 S.Ct. 1147, 1158 (2008). In Holowecki, the Supreme Court found that an "Intake Questionnaire" completed by the plaintiff which included the employee's and employer's names, addresses and telephone numbers; an allegation that the plaintiff and other employees had been the victims of "age discrimination;" the number of employees who worked at the facility where she was stationed; and a statement indicating that the plaintiff had not sought

9

the assistance of any government agency regarding the matter, and which was supplemented by a detailed six-age affidavit, at the end of which the plaintiff asked the agency to force the defendant to end its age discrimination, to be a "charge" sufficient to commence the ADEA's time limits and procedural mechanisms. Id. at 1159-1160. In so holding, however, the Supreme Court acknowledged that not every completed Intake Questionnaire should be treated as a charge, absent circumstances "where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required." Id. at 1159.

As plaintiff has not provided a copy of the Intake Questionnaire or the documents she submitted to the EEOC, it cannot be ascertained whether those documents could be reasonably construed as a request for the agency to take remedial action. Indeed, the cover letter indicates only that the plaintiff sought guidance from the agency. Accordingly, it is plaintiff's formal charge of discrimination filed on May 13, 2006 that commenced the charging period herein.[3]

"The EEOC charging period is triggered when a discrete unlawful practice takes place." Ledbetter, 127 S.Ct. At 2169. "A discrete retaliatory or discriminatory act occurred on the day that it happened." Kassner, 496 F.3d at 239 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). As plaintiff filed her charge of discrimination with the EEOC on May 13, 2006, her claims relating to discrete acts that occurred prior to July 17, 2005-- specifically her claims relating (1) to the denial of raises in February 2005 and at all times prior to July 17, 2005, (2) to the violation of "Article XXVI–Personnel

---

[3] In any event, even assuming that the Intake Questionnaire constitutes the filing of a "charge," the charging period would have then commenced on June 20, 2006. As will be seen below, all of plaintiff's claims of discrimination during her active employment with defendant pre-date even that earlier date and, thus, her claims would still be time-barred.

Data, Section 7" and purported harassment of plaintiff by Jankell prior to February 14, 2005[4]; (3) to the violation "of the Local 1930/NYPL contract– Article XI 'Leave Regulations' Section 4 by Ms. Bonnie Birman" in or before April 2005[5]; (4) to the denial of promotions prior to July 17, 2005; (5) to her suspension without pay for five (5) working days and transfer to Hunts Point Library on or before April 20, 2004; and (6) to the denial of a service review for the year 2004-2005-- are time-barred.[6]

However, to the extent plaintiff's complaint states a constructive discharge claim, that claim, which does not involve a discrete, identifiable act on the part of defendant, accrued when plaintiff gave defendant "definite notice of her intention to retire." Flaherty v. Metromail Corp., 235 F.3d 133, 138 (2d Cir. 2000). As plaintiff alleges that she retired on August 19, 2005, which is within the three hundred (300) day charging period, that claim is not time-barred.[7]

---

[4] Significantly, plaintiff does not set forth any acts of harassment by Jankell at any time after February 2005 and, thus, even if not considered discrete acts, the harassment did not continue after the charging period, i.e. the three hundred day period preceding the filing of the EEOC charge.

[5] "Article XI–Leave Regulations, Section 4" provides that "[r]easonable lateness due to transportation slow downs, weather conditions or transportation strikes within the City [of New York] shall be regarded as excused time. The staff member shall not be penalized by loss of pay or by overtime as a result of the above conditions." Plaintiff grieved the loss of one (1) day annual leave on January 24, 2005 when she failed to report to work at her assigned branch, the St. Agnes Branch, following a snow storm.

[6] For the sake of clarity, plaintiff's claims of discrimination and retaliation relating to her retirement benefits, pension and health insurance premiums remain.

[7] Although all of the discrete acts allegedly committed by defendant during plaintiff's active employment are not actionable as time-barred, plaintiff is not barred from using those prior acts as background evidence in support of her timely constructive discharge claim. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). I do not address the merits of plaintiff's constructive discharge claim at this time.

11

Unlike plaintiff's constructive discharge claim, to the extent plaintiff's complaint states a hostile work environment claim, which is "comprised of a series of separate acts that collectively constitute one 'unlawful employment practice,'" Morgan, 536 U.S. at 117, 122 S.Ct. 2061, that claim is time-barred. Although "[i]t does not matter, for purposes of [Title VII], that some of the component acts of the hostile work environment fall outside the statutory time period[,] * * * an act *contributing to the claim* [must] occur[] within the filing period" for the claim not to be time-barred. Morgan, 536 U.S. at 117, 122 S.Ct. 2061 (emphasis added). "In order for [a hostile work environment claim] to be timely, the employee need only file a charge within * * * 300 days of any act that *is part of the hostile work environment*." Id. at 118, 122 S.Ct. 2061 (emphasis added); see also Mudholkar, 2008 WL 213888, at * 2 (affirming the dismissal of the plaintiff's hostile work environment claim as time-barred because he failed to file a charge within 300 days of any act that was part of the hostile work environment). Although plaintiff's constructive discharge, i.e. retirement, occurred during the charging period, that act is not an act contributing to the hostile work environment. Plaintiff does not state any acts of harassment, hostility or abuse that occurred in the approximate one month period between July 17, 2005 and August 19, 2005, the date of her retirement, which contributed to, or is part of, the purported hostile work environment. Since the constructive discharge claim and plaintiff's claims relating to her retirement benefits cannot be said to have contributed to the hostile work environment as a matter of law, plaintiff's hostile work environment claim is time-barred.

Accordingly, defendant's motion to dismiss is granted and plaintiff's claims relating to her active employment, all of which involve discrete acts occurring prior to July 17, 2005, and her hostile work environment claim, are dismissed.

III. CONCLUSION

Defendant's motion is granted and plaintiff's Title VII and ADEA claims are dismissed to the extent they are based on discrete acts occurring during plaintiff's active employment prior to July 17, 2005 and a hostile work environment. The parties are directed to appear in my courtroom at 225 Cadman Plaza East, Brooklyn, New York on **June 2, 2008** at **10:00 a.m** for a settlement and/or scheduling conference with authority or persons with authority to resolve this action. Further, the parties are directed to engage in good faith settlement negotiations prior to the conference.

SO ORDERED.

/s/
SANDRA J. FEUERSTEIN
United States District Judge

Dated: April 30, 2008
Central Islip, New York

Copies to:

Julia W. Sherman, *pro se*
763 Ocean Parkway, #1C
Brooklyn, New York 11230

Proskauer Rose LLP
1585 Broadway
New York, New York 10036
Attn: Michael J. Lebowich, Esq.
   Nathaniel M. Glasser, Esq.